UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| NICOLLE CONYERS, <br><br> Plaintiff, <br><br> v. <br><br> VIRGINIA HOUSING DEVELOPMENT AUTHORITY, <br><br> Defendant. | Civil Action No. 3:12–CV–458 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion for Summary Judgment filed by Defendant Virginia Housing Development Authority ("VHDA")(ECF No. 35). *Pro se* Plaintiff Nicolle Conyers ("Plaintiff") alleges that VHDA unlawfully discriminated and retaliated against her based on her race and/or sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") during her employment with VHDA. Plaintiff has also filed a Motion for Sanctions for Spoliation of Evidence against VHDA for allegedly destroying relevant evidence (ECF No. 29). On February 22, 2013, the Court heard oral argument on the Motion for Summary Judgment. For the reasons stated below, the Court GRANTS VHDA's Motion for Summary Judgment and DENIES AS MOOT Plaintiff's Motion for Sanctions.

I. **PROCEDURAL HISTORY**

Plaintiff filed suit in this matter on June 22, 2012 after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 1, 2012. (Am. Compl. ¶ 33.) Plaintiff's Complaint initially named three VHDA employees as individual defendants: Susan Dewey, Christine Cavanaugh, and Mark McBride. Plaintiff

amended her Complaint and dismissed the action against Susan Dewey on July 17, 2012. Plaintiff's Amended Complaint alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964. Specifically, Count I alleges employment discrimination on the basis of race and/or sex, and Count II alleges that Plaintiff was retaliated against for making complaints regarding employment discrimination to her employer.

On August 8, 2012, VHDA filed a Motion to Dismiss the Amended Complaint in its entirety and Christine Cavanaugh ("Cavanaugh") and Mark McBride ("McBride") filed a separate Motion to Dismiss the Amended Complaint as to them. On September 20, 2012, the Court granted the Motion filed by Cavanaugh and McBride, and dismissed Plaintiff's claims against these individual defendants. The Court denied VHDA's Motion to Dismiss, but to the extent that Plaintiff also sought to present claims for hostile work environment and civil conspiracy, the Court held that Plaintiff had not sufficiently stated a claim for which relief can be granted for either hostile work environment or civil conspiracy.

On September 19, 2012, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence, but withdrew the motion on September 25, 2012 in an effort by the parties to resolve the issue on their own. On December 13, 2012, Plaintiff filed the instant Motion for Sanctions with regards to the same evidence as her prior motion. On January 23, 2013, VHDA filed its Motion for Summary Judgment. Both matters have been fully briefed, and the Court heard oral argument on February 22, 2013.

II. **FACTUAL BACKGROUND**

The following facts are not in dispute. Plaintiff, an African-American female, was formerly employed in the Information Technology Services ("ITS") department at VHDA, a not-for-profit organization that helps Virginia residents obtain affordable housing. Plaintiff

began working full-time at VHDA in 2003 (Pl. Dep. 32-33), and in April 2007, she became a Senior Desktop Support Analyst (Pl. Dep. 44.) Plaintiff was to report to the HelpDesk Manager, who reported to the Assistant Director of Technology Management, who, in turn, reported to the ITS Director. From the summer of 2005 until the end of Plaintiff's employment with VHDA, Janet Wiglesworth was the ITS Director. (*Id.* at 51.)

On March 6, 2008, Plaintiff was placed on probation until August 31, 2008 for accessing and reading an email containing personal information between another VHDA employee and Wiglesworth without Wiglesworth's permission. (*See* Pl. Dep. 61-64; *id.* Ex. 13.) In connection with this probation, Plaintiff was given a Performance Correction Counseling form which provided that Plaintiff was to "use the proper chain of command," and "bring any issues to her Manager (David Kohan) or Assistant Director of her department . . . " (Pl. Dep. Ex. 13.) The form also directed that Plaintiff "is not to go directly to Director of ITS (Janet Butler)[1] without prior knowledge from either David Kohan or [the Assistant Director of Plaintiff's department.]" *Id.* Further, Plaintiff was advised that she would be terminated if she violated any VHDA policies while on probation, and that after the probation concluded, the "Desktop Services Manager and Managing Director of Human Resources will review [Plaintiff's] progress and performance after the period has passed to determine if [Plaintiff] should come off probation, remain on, or should be terminated." *Id.*

In March 2010, Plaintiff was assigned a work order requiring her to conduct a "root cause analysis," wherein she was to analyze a problem affecting Blackberry users within VHDA management, including Wiglesworth. (Pl. Dep. 106, 109-10.) On March 17, 2010, Plaintiff and Wiglesworth discussed their personal friendship in Wiglesworth's office, and

---

[1] At the relevant time, Janet Wiglesworth's last name was Butler. (Pl. Dep. 66.) For the purposes of this Memorandum Opinion, the name Janet Wiglesworth will be used.

after Plaintiff questioned the status of the friendship, Wiglesworth advised Plaintiff that Wiglesworth would have to involve Human Resources. (*Id.* at 98-100.) On April 1, 2010, Plaintiff met with Wiglesworth and Christine Cavanaugh, a Human Resources generalist at VHDA, and Wiglesworth informed Plaintiff that Plaintiff was being placed on probation for thirty days. (*Id.* at 85-86.) At this meeting, Wiglesworth told Plaintiff that Plaintiff had breached her trust and that she would no longer tolerate Plaintiff intruding upon her personal life. (*Id.* at 89.) Wiglesworth instructed Plaintiff to follow the chain of command and to refrain from loitering outside of Wiglesworth's office. (*Id.* at 92-93.) Lastly, Wiglesworth advised Plaintiff that if she acted inappropriately or violated the terms of her probation, she would face an extension of probation, would be referred to the Employee Assistance Program ("EAP"), and could be terminated. (*Id.* at 94-95.) After Wiglesworth left the meeting, Cavanaugh told Plaintiff not to have any contact with Wiglesworth whatsoever. (*Id.* at 121.)

Following the April 1, 2010 meeting, Plaintiff continued to work on the root cause analysis that she had previously been assigned, and in doing so, communicated with Wiglesworth directly regarding problems that Wiglesworth had experienced related to her Blackberry. (*See id.* at 105.) In mid-April 2010, Cavanaugh informed Plaintiff that she was suspended for three days for violating the terms of her probation by communicating directly with Wiglesworth about the root cause analysis. (*Id.* at 103-04.) Plaintiff was also referred to a mandatory session with an EAP counselor. (*Id.* at 131-32.) Subsequently, and without communicating with Wiglesworth beforehand, Plaintiff paid for stew that Wiglesworth had ordered to benefit another co-worker's fundraiser. (*Id.* at 142.)

In May 2010, Wiglesworth and Cavanaugh met with Plaintiff to inform her that the

probation had been extended because Plaintiff had violated the terms of her probation by communicating with Wiglesworth about the root cause analysis and by loitering outside of Wiglesworth's office. (*Id.* at 103, 116, 148, 154.) At this meeting, Wiglesworth warned Plaintiff that any future violations of her probation would result in termination, and that Plaintiff was not to contact Wiglesworth directly ever in the course of their working relationship (*id.* at 116-17.) On May 6, 2010, Plaintiff wrote Cavanaugh complaining that the personnel rules were being arbitrarily enforced in violation of her civil rights and challenging the grounds given for extending her probation. (Pl.'s Resp. Mot. Summ. J. Ex. L.)

In July 2010, Plaintiff requested to participate in a professional developmental opportunity wherein one HelpDesk employee would be chosen to monitor and report on the HelpDesk's daily operations. On July 8, 2010, Cavanaugh informed Plaintiff that Plaintiff was not eligible to participate due to her recent probation and Code of Conduct violations, as the opportunity was reserved for employees in good standing. (Pl.'s Dep. Ex. 29.) Two white male employees were allowed to participate in the opportunity.

In late September 2010, Mark McBride became Plaintiff's supervisor, and McBride met with Plaintiff in October to discuss Plaintiff's objectives for the following year. (Pl.'s Dep. 206.) In this meeting, McBride described Plaintiff as a "bully" and claimed that Plaintiff had disrupted a prior meeting with several company managers by standing up, banging on the table, and yelling angrily at a manager. (*Id.* at 206-07.) On November 23, 2010, Plaintiff and McBride were discussing a printer request submitted by another employee, when the conversation eventually became a heated argument in which each person raised their voice. (*Id.* at 224, 284.) During the argument, Plaintiff brought up the prior meeting in which McBride had called Plaintiff a bully and described her as angry, and Plaintiff stated

5

that she was tired of being falsely accused, harassed, and criticized. (*See id.* at 224, 245-48.)

Eventually, Plaintiff returned to her desk to pack up her belongings and check her emails before leaving for home. (*Id.* at 215.) After Plaintiff sat down, McBride approached her desk from behind and asked her a series of questions about why she had chosen not to continue the argument and was instead being silent at her desk. (*See id.* at 219.) When Plaintiff attempted to push her chair back from her desk, McBride used his leg to block the chair from moving, preventing Plaintiff from being able to rise from her desk. (*Id.* at 215-21.) After Plaintiff left for the day on November 23, 2010, McBride reported the incident to Cavanaugh, who in turn, discussed the incident with her supervisor, Barbara Blankenship. Blankenship discussed the incident with Wiglesworth and Susan Dewey, VHDA's Executive Director, and the three managers decided to terminate Plaintiff. On December 9, 2010, Plaintiff was informed that she was discharged. An African-American man ultimately took over Plaintiff's job title and a White woman took over Plaintiff's job duties. (*Id.* at 233-34.) On or about March 9, 2011, Plaintiff filed a written complaint with the EEOC and received a right-to-sue letter on or about April 1, 2012. Plaintiff filed in this Court on June 22, 2012.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)(internal quotation marks omitted). However, if the court finds that there *is* a genuine issue of material fact, the

motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). Notably, a court must typically construe a *pro se* plaintiff's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), especially in a civil rights case. *See Brown v. N.C. Dep't of Corrections*, 612 F.3d 720, 722 (4th Cir. 2010)("'[l]iberal construction of the pleading is particularly appropriate' because it 'is a pro se complaint raising civil rights issues'")(internal citations omitted); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotations omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)(internal quotation marks and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is

only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249–50.

**IV.   DISCUSSION**

   *A. Count One: Unlawful Discrimination*

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). Title VII further prohibits an employer from "limit[ing] . . . his employees . . . in any way which would . . . adversely affect his status as an employee, because of such individual's race . . . [or] sex." § 2000e-2(a)(2). A plaintiff may establish a Title VII discrimination claim and avoid summary judgment either by (1): "demonstrating through direct or circumstantial evidence that sex or [race] discrimination motivated the employer's adverse employment decision," or (2) by establishing a *prima facie* case of discrimination and demonstrating "that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-85 (4th Cir. 2004).

The parties' briefs and oral arguments have focused Plaintiff's discrimination claim on the latter means of establishing a Title VII cause of action, namely, the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). Under this framework, the plaintiff must first establish a *prima facie* discrimination claim by showing by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her job performance met her employer's legitimate expectations at the time of the adverse action;

8

and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill*, 354 F.3d at 285; *see Tx. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell*, 411 U.S. at 802. Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Hill*, 354 F.3d at 285. "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer meets this burden, the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reasons were not the employer's true reasons, but rather were a pretext for discrimination. *Id.* at 143; *Hill*, 354 F.3d at 285. At this stage, the plaintiff's burden to prove pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Plaintiff asserts that VHDA discriminated against her in violation of Title VII by placing her on probation, suspending her, extending the probation, and by terminating her. The parties do not dispute that, as an African-American woman, Plaintiff is a member of a protected class, and VHDA agrees that Plaintiff suffered from adverse employment action with respect to her probation and its extension, suspension, and termination. However, VHDA maintains that Plaintiff cannot establish the third *prima facie* element, specifically that she was performing consistent with VHDA's legitimate expectations at the time. Further, VHDA asserts that Plaintiff has not satisfied the fourth *prima facie* element because she has not established that the position was filled by similarly-situated persons outside of her protected class, since she was replaced by a Black man and a White woman.

However, the Court need not address the fourth *prima facie* element nor the

remaining prongs of the *McDonnell Douglas* framework since, even viewing the evidence in the light most favorable to Plaintiff, Plaintiff cannot satisfy the third element of a *prima facie* Title VII discrimination claim. In determining whether an employee was performing her duties satisfactorily at the time of the adverse action, "[i]t is the perception of the decision maker which is relevant," *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980), and the employee's own perception of her performance is irrelevant, *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). *See Jones v. Calvert Group, Ltd.*, DKC 06-2892, 2010 U.S. Dist. LEXIS 127715, at *17-18 (D.Md. Dec. 3, 2010). The plaintiff may establish that she was meeting her employer's expectations by providing: (1) her employer's concessions that she was performing satisfactorily at the time of the adverse action; (2) evidence of prior positive performance reviews from the employer; or (3) qualified expert opinion testimony as to the employer's legitimate performance expectations and an analysis and evaluation of the plaintiff's performance in light of those expectations. *See King*, 328 F.3d at 149-50; *Calvert Group, Ltd.*, 2010 U.S. Dist. LEXIS 127715, at *17-18. *But see Luther v. Gutierrez*, 618 F.Supp.2d 483, 492 (E.D. Va. 2009) (holding that prior positive performance evaluations are not dispositive as to whether the employer was satisfied with the employee's performance by the time of the termination).

In this case, while Plaintiff was technically proficient, the record evidence demonstrates that she did not meet VHDA's legitimate expectations regarding professionalism at the times that she was placed on probation, suspended, placed on extended probation, and terminated. Plaintiff acknowledges that after she read Wiglesworth's email without permission, she was placed on probation for this conduct for legitimate, non-discriminatory reasons. (Pl. Dep. 97.) Plaintiff's friendship with

Wiglesworth subsequently became volatile (*see* Pl. Dep. 201), and she gave Wiglesworth personal letters about their friendship while in the workplace. (Pl. Dep. 204.) When Plaintiff was placed on probation a second time on April 1, 2010, she was advised that she had inappropriately intruded into Wiglesworth's personal life and that Wiglesworth was concerned about her understanding of appropriate work relationships. (Pl. Dep. 89, 96-97.) By example, Plaintiff sent Wiglesworth greeting cards and gifts, and Wiglesworth asserted that Plaintiff inappropriately attended events for Wiglesworth's children.

When Plaintiff was suspended just a few weeks later, she was warned again that she had inappropriately communicated with Wiglesworth, and by May 2010, her probation was extended due to the earlier communication with Wiglesworth, the fact that Plaintiff bought stew for Wiglesworth, and because VHDA concluded that Plaintiff was loitering around Wiglesworth's office. (*See* Pl. Dep. Ex. 24.) Further, despite McBride's role in the argument with Plaintiff and his own conduct in physically preventing Plaintiff from rising from her desk, VHDA's Code of Conduct expressly prohibits fighting and other disorderly and disruptive conduct. (Pl. Dep. Ex. 7.) Plaintiff admits that she raised her voice and engaged in this heated argument with her superior. Although Plaintiff disagrees with VHDA's characterizations of her conduct,[2] it is apparent that VHDA found her interactions with management to be inappropriate at the time of the adverse actions, and "[i]t is the perception of the decision maker which is relevant," *Smith*, 618 F.2d at 1067.

Lastly, VHDA management had long expressed concern about Plaintiff's level of professionalism, as her performance reviews dating back to the 2006-2007 evaluation

---

[2] Plaintiff understood the direction that she was to follow the chain of command to mean that she was to communicate with Wiglesworth when needed, as Wiglesworth was a part of her chain of command. (Pl. Dep. 119.) Further, Plaintiff claims that her project manager instructed her to give information for a project directly to Wiglesworth. (Pl. Dep. 241-42.)

describe her as tending to become overly personal with colleagues or emotional when managing difficult situations or resolving conflicts.[3] Notably, Plaintiff's 2007-2008 evaluation describes her conduct in reading Wiglesworth's email as "very detrimental to [Plaintiff's] job." (Pl. Dep. Ex. 12 at VHDA002049.) Despite being found to meet VHDA's *overall* expectations in her performance evaluations, these evaluations demonstrate that VHDA repeatedly warned Plaintiff that she needed to improve her behavior. Plaintiff has not provided any concessions by VHDA that she was performing satisfactorily in regards to her professional conduct at the relevant times or any qualified expert opinion evidence, and her prior evaluations show that VHDA had long taken issue with her behavior. Plaintiff has thus not shown by a preponderance of the evidence that she was performing to VHDA's satisfaction at the relevant times. For these reasons, Plaintiff has not established the third *prima facie* element with respect to her probation, suspension, extended probation, or termination, and the Court need not proceed further under *McDonnell Douglas*.

Plaintiff also alleges discriminatory conduct by John Demott, her supervisor from

---

[3] *See* Pl. Dep. Ex. 11 at VHDA002060-61 (In Plaintiff's 2006-2007 evaluation, finding that "[w]hen conflicts arise, [Plaintiff] sometimes loses her objectivity. She has a tendency to express her emotions in ways that are counterproductive"); Pl. Dep. Ex. 12 at VHDA002047 (In Plaintiff's 2007-2008 evaluation, remarking that "[w]hile [Plaintiff] has done a good job this year from the technical part she needs to work [on] her judgment and use of her position. [Plaintiff] has also been talked to a few times for socializing with friends at VHDA"); Pl. Dep. Ex. 15 at VHDA002042 (In Plaintiff's 2008-2009 evaluation, finding that "[Plaintiff] maintains control of her emotions . . . [h]owever, when conflicts arise, she sometimes loses her objectivity."); Pl. Dep. Ex. 26 at VHDA002023 (In Plaintiff's 2009-2010 evaluation, noting that "there have been times that [Plaintiff] oversteps her bounds when interacting with management"); *id.* at VHDA002027-28 ("[Plaintiff] has had some roadblocks this year in her core duties-*there have been some significant breaches in trust regarding her judgment therefore any manager must spend more time overseeing her in her role then should be expected of a Senior Level Analyst* . . . [Plaintiff] needs to focus on maintaining her professionalism and not allowing her emotions to color her attitude . . . [Plaintiff] had high-points and low-points throughout the year. Where she excels, she does very well. *But where she has challenges, they are significant* . . . ")(emphasis added).

May to August 2010, who she claims: (1) questioned in front of management whether Plaintiff would attempt to sabotage the network (Pl. Dep. 166-69), (2) failed to give Plaintiff requested budget information while responding to budget requests from other employees (*Id.* at 260-61), and (3) denied Plaintiff's request for leave until a White male co-worker asked on her behalf. (*Id.* at 262-63.) In order to establish that she suffered an adverse employment action in a discrimination claim, a plaintiff must prove that her employer's conduct resulted in an ultimate employment decision, such as "hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981); *see also Brockman v. Snow*, 217 Fed. Appx. 201, 205 (4th Cir. 2007). However, both in the written briefs and in the hearing on VHDA's Motion, Plaintiff admits that she was ultimately granted leave, and she has otherwise failed to identify any negative consequences to her employment following these alleged actions. Accordingly, the alleged acts of discrimination by John Demott do not constitute adverse employment actions and Plaintiff has not satisfied the second *prima facie* element of a discrimination claim with respect to this alleged conduct. For these reasons, each of Plaintiff's discrimination claims fails and the Court GRANTS the Motion for Summary Judgment with respect to Count One.

    B. *Count Two: Unlawful Retaliation*

Title VII also prohibits retaliation against an employee who opposes any employment practice that is unlawful under Title VII ("opposition clause") or participates in a related proceeding ("participation clause"), *see* § 2000e-3(a); *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 457-58 (4th Cir. 2002), and the familiar *McDonnell Douglas* framework applies. In order to state a *prima facie* retaliation claim, a plaintiff must show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against

her, and (3) a causal connection existed between the protected activity and the adverse action. *Anderson*, 281 F.3d at 458; *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir. 1998). Once the plaintiff states a *prima facie* case, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse action, and if the defendant meets this burden, the burden returns to the plaintiff to establish pretext by a preponderance of the evidence. *Anderson*, 281 F.3d at 458*; see Reeves*, 530 U.S. at 143. Opposition activity is protected under Title VII when the employee "complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner." *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). An employee's participation activity is protected when he or she makes a charge, testifies, or participates "in any manner in a Title VII investigation, proceeding, or hearing." *Id.*

Plaintiff asserts that VHDA retaliated against her in violation of Title VII by denying her the developmental opportunity and by terminating her following her complaints to management. However, Plaintiff fails to satisfy the first *prima facie* element of her retaliation claim, since, viewing the evidence in the light most favorable to Plaintiff, she has not shown that she engaged in a protected activity. An employee who complains to her employer has engaged in protected opposition activity under Title VII only if the employee held an objectively reasonable belief in light of all of the circumstances that her employer is violating or had violated Title VII. *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006)("[A]n employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress."); *see Gray v. Walmart Stores, Inc.,* 7:10-CV-171-BR, 2011 U.S. Dist. LEXIS 51155, at *21 (E.D. N.C. May 12, 2011)(citing *Jordan*).

Further, the employee must complain about activity that constitutes unlawful discrimination under Title VII, rather than about unfair treatment generally. *See Monk v. Potter*, 723 F.Supp.2d 860, 880 (E.D. Va. 2010)("Title VII does not prohibit retaliation against employees who do not allege unlawful discrimination"); *see also Mixon v. Charlotte-Mecklenburg Sch.*, 3:11-CV-228-MOC-DSC, 2011 U.S. Dist. LEXIS 124291, at *17 (W.D. N.C. Aug. 5, 2011)("Title VII requires that employees provide some kind of notice to their employer that they are complaining about prohibited practices covered by the statute. Generalized complaints about disputes or annoyances in the workplace are insufficient"); *Gray*, 2011 U.S. Dist. LEXIS 51155, at *21 (finding no protected activity where the plaintiff's emails to management did not mention racial discrimination, harassment, or retaliation); *Richardson v. Richland Cnty. Sch. Dist. No. One*, 52 Fed. Appx. 615, 617 (4th Cir. 2002)(unpublished)(holding that a plaintiff could not show that she engaged in protected activity because she did not present evidence that she informed her employer that her complaints were based on race or age discrimination).

In this case, neither of Plaintiff's complaints to Cavanaugh and McBride complained of activity that was unlawful under Title VII, and therefore, Plaintiff has not established the first *prima facie* element. With regards to Plaintiff's claim that her May 2010 email to Cavanaugh prompted Cavanaugh to retaliate by denying Plaintiff the developmental opportunity in July 2010, the email challenges the grounds for extending Plaintiff's probation and asserts that Cavanaugh's interpretation of loitering is vague and "allows HR to enforce this rule arbitrarily and with obvious bias." (Pl. Dep. Ex. 24 at VHDA000280.) Plaintiff's email continues that "this selective enforcement violates the Due Process Clause of the 14th Amendment," and she concludes that the process was "designed to undermine

or sabotage any reasonable and apparent attempt to comply," basing this belief on "the ambiguity of the Performance Correction Counseling form, compounded by the multiple sources of reference and arbitrary enforcement which has violated [Plaintiff's] civil liberties." (*Id.* at VHDA000280-81.) Nowhere does this email claim that Plaintiff is being discriminated against because of her race and/or sex, and Plaintiff has since acknowledged that her reference to her civil liberties meant only that she was found to have violated her probation without due process, that is, without being given an opportunity to explain her side of the situation. (Pl. Dep. 153-54, 240.) While Plaintiff certainly complains of unfair treatment, "Title VII does not ensure that employees will always be treated fairly. . ." *Jones v. Karnick, Inc.*, No. 8:11-1554-HMH-JDA, 2012 U.S. Dist. LEXIS 972, at *8 (D. S.C. Jan. 3, 2012)(internal citations omitted). Plaintiff has not satisfied the first *prima facie* element as her email does not complain of unlawful activity under Title VII, and there is no evidence that it would have been objectively reasonable to believe that the selective rule enforcement she was complaining of was a violation of Title VII.

Similarly, Plaintiff's complaint to McBride that she was tired of being falsely accused and harassed does not complain of unlawful activity under Title VII. Plaintiff assumes that McBride was physical with her due to her sex and that he accused her of being angry out of a belief that she is an "angry black woman" (Pl. Dep. 248), but her complaint was a generalized grievance that did not reference race or sex in any way. Plaintiff has not shown that it was objectively reasonable to believe that, by falsely accusing and harassing her, McBride had violated Title VII, and thus, she has not established that her complaint was protected activity. Since Plaintiff has not satisfied the first *prima facie* element of a

retaliation claim, the Court need not consider the remaining elements[4] nor proceed with the *McDonnell Douglas* analysis. Therefore, the Court GRANTS the Motion for Summary Judgment as to Count Two. Further, in light of the Court's ruling on VHDA's Motion for Summary Judgment, the Court hereby DENIES AS MOOT Plaintiff's Motion for Sanctions.

## V. CONCLUSION

For the reasons stated above, VHDA's Motion for Summary Judgment is GRANTED. In addition, Plaintiff's Motion for Sanctions for Spoliation of Evidence is DENIED AS MOOT.

Let the Clerk send a copy of this Memorandum Opinion to Plaintiff, who appears *pro se*, and all counsel of record.

An appropriate order shall issue.

                    /s/
James R. Spencer
United States District Judge

ENTERED this __26th__ day of February 2013.

---

[4] Notably, Plaintiff herself claims that McBride never told Cavanaugh about her complaints (Pl. Resp. Mot. Sum. J. 11), and Plaintiff does not contend that the managers who terminated her were otherwise aware; thus, Plaintiff could not satisfy the third *prima facie* element, because even if this complaint were protected activity, "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case" in a retaliation claim. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).